ROBERT WISNIEWSKI P.C.
17 State Street, Suite 820
New York, NY 10004
Tel.: (212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
STEPHANIE MORO,                                 :

                        Plaintiff,   :   **Docket No:**

  -against-                                        :

                                                              **JURY TRIAL DEMANDED**

THE JUILLIARD SCHOOL,                      :

                                               :

                    Defendant.
------------------------------------------------------------------X

## COMPLAINT

Plaintiff Stephanie Moro ("Plaintiff"), by and through her attorneys, Robert Wisniewski P.C., as and for her Complaint against Defendant The Juilliard School ("Defendant"), states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant for disability discrimination, failure to accommodate, hostile work environment, and retaliation including but not limited to termination of her employment for her opposition to, and complaint of, said discrimination, failure to accommodate, and hostile work environment in violation of the Americans With Disabilities Act, as amended (the "ADA"), i.e., 42 U.S.C. §§ 12101 *et seq*.

2. Plaintiff also brings this action against Defendant under the Family and Medical Leave Act of 1993, as codified in Section 29 of the United States Code ("FMLA"), for retaliatory

1

termination of her employment due to her entitlement to protected medical leave.

3. Plaintiff also asserts claims against Defendant under the New York Executive Law § 296 ("NYSHRL") and the New York City Charter and Administrative Code § 8-107 ("NYCHRL") for discrimination, failure to accommodate and hostile work environment based on disability, and retaliation, including but not limited to failure to promote and termination of Plaintiff's employment.

4. Plaintiff was employed by Defendant initially as an Assistant Box Office Manager then as an Assistant Director, Ticketing Manager at Defendant, located at 60 Lincoln Center Plaza in New York, NY from August 2014 until her discriminatory and retaliatory termination on June 1, 2023.

5. Defendants impermissibly discriminated against Plaintiff based on her disability and entitlement to protected medical leave, and retaliated against her by, among other things, terminating her employment.

## PARTIES, JURISDICTION, AND VENUE

6. Plaintiff, a former employee of Defendant, is a resident of the State of New York, Bronx County.

7. At all relevant times, Defendant has been and is a domestic non-for-profit corporation duly organized under, and existing by virtue of, the laws of the State of New York and having its principal place of business within the State of New York.

8. At all relevant times, Defendant employed fifteen (15) or more employees, and thus, was Plaintiff's "employer" within the meaning of that term under the ADA, NYSHRL, and NYCHRL.

9. This Court has personal jurisdiction over Defendant because it is domiciled in the

State of New York and maintains its principal places of business within the state.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the ADA and FMLA. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because those claims are intimately related to Plaintiff's federal claims and form part of the same case or controversy.

11. This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. §1391(b), because substantial events relating to the claims herein occurred in this district, and one or more Defendants reside in this district.

## PREREQUISITES

12. Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of the Right to Sue (the "Right to Sue Letter") concerning the charge.

## TRIAL BY JURY

13. Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

14. Defendant is a private performing arts conservatory and school in New York City.

15. Plaintiff worked initially as an Assistant Box Office Manager then as an Assistant Director, Ticketing Manager at Defendant from August 2014 until her discriminatory and retaliatory termination on June 1, 2023, at its location in 60 Lincoln Center Plaza, New York, NY 10023.

16. Plaintiff was qualified for both positions because of her previous experience working in box office operations.

17. Plaintiff worked on-site at Defendant, though this was not a strict requirement. In

fact, during the COVID pandemic, Plaintiff worked remotely and satisfactorily completed her duties.

18. On or about July 21, 2022, Plaintiff became ill and was hospitalized a week later.

19. Plaintiff suffers from Sjorjen's Syndrome. Sometimes, as it occurred here, there is inflammation in Plaintiff's joints which causes her immense pain.

20. From July 28, 2022 until October 20, 2022, Plaintiff was on pre-approved leave pursuant to the FMLA.

21. From October 21, 2022 until April 6, 2023, Plaintiff was on short-term disability plus accrued vacation.

22. At a March 24, 2023 Zoom conference with Defendant's benefits team, Plaintiff explained to Dylan Flynn, the Assistant Director of Human Resources, and Dalia Shair, the Assistant Manager of Human Resources, that she was ready to come back to work. Plaintiff explained to Mr. Flynn and Ms. Shair that she would be seeing her physician soon and expected to be cleared to return to work but only remotely because of her mobility issues.

23. Plaintiff's position never required her to be on-site only and she was able to perform all of her duties remotely during the COVID pandemic and after.

24. Despite this, Ms. Shair informed Plaintiff that filing for long-term disability was her only option. On March 31, 2022, Ms. Shair further instructed Plaintiff to extend her leave not with legacy time and vacation but only through long-term disability, and that Plaintiff should proceed by contacting the Standard Insurance Company ("The Standard"), Defendant's disability carrier, to apply for long-term disability.

25. On April 17, 2023, Mr. Flynn informed Plaintiff that he had connected with The Standard about applying for long-term disability and that a representative from The Standard

would be contacting Plaintiff directly.

26. Plaintiff was at a loss as to why these procedures were necessary because Plaintiff had already told Defendant that she would be willing to come back to work, as long as there are reasonable accommodations. There was very little reason as to why Plaintiff would need to apply for long-term disability, but, understanding that her job would be protected, Plaintiff acted on Ms. Shair and Mr. Flynn's dubious instructions.

27. On April 26, 2023, Plaintiff received clearance from her physician that she could return to work on May 8, 2023, but only remotely because of her mobility issues. The physician's office sent this documentation to both Defendant and The Standard.

28. Troubled by the lack of communication by Defendant, Plaintiff emailed Human Resources a week later asking if they had received the paperwork from her physician and The Standard. Plaintiff also informed them that she could return to work on May 8, 2023, and asked what she needed to do to transition back.

29. Human Resources responded that she was not cleared to return to work because Defendant had not been notified by The Standard of the status of Plaintiff's case. This did not make sense because there was no reason for requiring Plaintiff to apply for long-term disability through The Standard, as she had already stated to Defendant that she was willing to come back to work on May 8, 2023, with reasonable accommodation.

30. Jessica Rothbart, the Human Resources Director, also texted Plaintiff stating that she could not return to work without providing the paperwork from her physician and The Standard. Plaintiff informed Ms. Rothbart that she had already sent Defendant the documentation a week prior and was ready to return to work remotely. Ms. Rothbart curiously stated that they should "speak next week after the paperwork comes through."

31. On May 9, 2023, Plaintiff again emailed Human Resources and advised that she had all of the necessary documentation ready in hand and could send it to Defendant directly again.

32. Expecting a productive conversation with Ms. Rothbart on May 10, 2023, to Plaintiff's shock, she received an email from her that Plaintiff would be terminated from her position on June 1, 2023.

33. In a telephone call with Ms. Rothbart on May 12, 2023, she stated that the reason for Plaintiff's termination was that her position's vacancy had an impact on Box Office operations. This was an absurd statement considering that Defendant's season for live in-person events was coming to an end. Furthermore, Defendant was still working its way through the effects of the COVID pandemic and many people were still not attending live in-person concerts of events at the time.

34. Ms. Rothbart then proceeded to list a litany of Plaintiff's alleged misdeeds and performance issues that were suddenly and inexplicably "discovered."

35. In all of Plaintiff's years working at Defendant, she performed her job diligently and had never been warned or punished by Defendant for any alleged performance issues or misdeeds until her conversation with Ms. Rothbart on May 12, 2023.

36. Defendant had roped Plaintiff into applying for long-term disability in a scheme to pretextually terminate her from employment. The true reason Defendant terminated Plaintiff was due to her disability.

37. Plaintiff's termination was flagrantly discriminatory. Moreover, upon information and belief, Defendant hired a nondisabled worker as Plaintiff's replacement.

38. As a result of Defendant's discrimination against Plaintiff, Plaintiff has, and will likely continue to, suffer significant economic consequences, including lost back and front wages,

as well as physical sickness and emotional distress.

39. Defendant's acts of discrimination and retaliation were malicious and wanton, and must be punished and deterred by imposing punitive and/or liquidated damages.

40. No reasonable person could tolerate such treatment. Defendant's treatment of Plaintiff changed the conditions of her employment.

41. Defendant's disparate treatment, failure to accommodate, and termination of Plaintiff's employment due to her disability were intentional and in violation of the ADA, NYSHRL, and NYCHRL.

## FIRST CLAIM FOR RELIEF
(**Disability Discrimination, Hostile Work Environment, and Failure to Provide a Reasonable Accommodation in Violation of the ADA**)

42. Plaintiff repeats and realleges each and every allegation previously set forth.

43. Plaintiff is a person covered by and intended to benefit from the provisions of the ADA.

44. Plaintiff is a qualified individual with a disability under the ADA.

45. Defendant violated the ADA, 42 U.S.C. § 12101, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision-making employees to engage in discriminatory employment practices in which Plaintiff's disability was the motivating, if not the only factor.

46. Defendant's policies and practices resulted in Plaintiff being subject to disparate treatment and hostile work environment based on disability. Plaintiff was fully qualified to perform the essential functions of her position with or without reasonable accommodation. After Plaintiff informed Defendant of her illness, Defendant subjected Plaintiff to inferior terms and conditions of employment and hostile work environment, failed to reasonably accommodate

7

Plaintiff's actual or perceived disability, and ultimately, fired Plaintiff because of her disability.

47. As a result of Defendant's conduct, Plaintiff has suffered, and continues to suffer damages, including but not limited to, emotional pain and suffering, as well as loss of past and future wages and benefits.

48. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal remedies available under the ADA, including, but not limited to, punitive damages and compensatory damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

### **SECOND CLAIM FOR RELIEF**
(**Disability Discrimination, Hostile Work Environment, and Failure to Provide a Reasonable Accommodation in Violation of the NYSHRL**)

49. Plaintiff repeats and realleges each and every allegation previously set forth.

50. New York Executive Law § 296(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's…disability... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

51. Plaintiff is a qualified individual with a disability under the NYSHRL.

52. By and through its course of conduct as alleged herein, Defendant and its agents discriminated against Plaintiff by subjecting her to disparate treatment, hostile work environment, and by terminating her employment on the basis of disability in violation of the NYSHRL.

53. Defendant's conduct was intentional, deliberate, willful and conducted in callous, malicious and reckless disregard of Plaintiff's protected rights.

54. Plaintiff was fully qualified to perform the essential functions of her position with or without reasonable accommodation. After Plaintiff informed Defendant of her illness,

Defendant subjected Plaintiff to inferior terms and conditions of employment and hostile work environment, failed to reasonably accommodate Plaintiff's actual or perceived disability, and ultimately, fired Plaintiff because of her disability.

55. As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal and equitable remedies available under the NYSHRL, including, but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, and compensatory and punitive damages, in amounts to be determined at trial.

56. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal remedies available under the NYSHRL, including, but not limited to, punitive damages and compensatory damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF
**(Disability Discrimination, Hostile Work Environment, and Failure to Provide a Reasonable Accommodation in Violation of the NYCHRL)**

57. Plaintiff repeats and realleges each and every allegation previously set forth.

58. The New York Administrative Code § 8-107.1 provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ... because of…disability… to refuse to hire or employ or to refuse to bar or discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment."

59. Plaintiff is a qualified individual with a disability under the NYCHRL.

60. By and through its course of conduct as alleged herein, Defendant and its agents discriminated against Plaintiff by subjecting her to disparate treatment, hostile work environment, and by terminating her employment on the basis of disability in violation of the NYCHRL.

61. Defendant's conduct was intentional, deliberate, willful and conducted in callous, malicious and reckless disregard of Plaintiff's protected rights.

62. Plaintiff was fully qualified to perform the essential functions of her position with or without reasonable accommodation. After Plaintiff informed Defendant of her illness, Defendant subjected Plaintiff to inferior terms and conditions of employment and hostile work environment, failed to reasonably accommodate Plaintiff's actual or perceived disability, and ultimately, fired Plaintiff because of her disability.

63. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal remedies available under the NYCHRL, including, but not limited to, punitive damages and compensatory damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF
(**Disability Retaliation in Violation of the ADA**)

64. Plaintiff repeats and realleges each and every previous allegation as fully set forth.

65. Defendant retaliated against Plaintiff by terminating her employment on the basis of her taking time off to treat her disability, by creating a hostile work environment for Plaintiff, and by failing to provide her with a reasonable accommodation for her disability. Defendant was aware that Plaintiff requested a reasonable accommodation prior to her termination.

66. Defendant's conduct was intentional, deliberate, willful and conducted in callous, malicious and reckless disregard of Plaintiff's protected rights.

67. As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal and equitable remedies available under the ADA, including, but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, and compensatory and punitive damages, in amounts to be

determined at trial.

68. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal remedies available under the ADA, including, but not limited to, punitive damages and compensatory damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
(**Disability Retaliation in Violation of the NYSHRL**)

69. Plaintiff repeats and realleges each and every allegation previously set forth.

70. Defendant retaliated against Plaintiff by terminating her employment on the basis of taking time off to treat her disability, by creating a hostile work environment, and by failing to provide her with a reasonable accommodation for her disability. Defendant was aware that Plaintiff requested a reasonable accommodation prior to her termination.

71. Defendant's conduct was intentional, deliberate, willful and conducted in callous, malicious and reckless disregard of Plaintiff's protected rights.

72. As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal and equitable remedies available under the NYSHRL, including, but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, and compensatory and punitive damages, in amounts to be determined at trial.

73. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal remedies available under the NYSHRL, including, but not limited to, punitive damages and compensatory damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (Disability Retaliation in Violation of the NYCHRL)

74. Plaintiff repeats and realleges each and every allegation previously set forth.

75. Defendant retaliated against Plaintiff by terminating her employment on the basis of taking time off to treat her disability, by creating a hostile work environment, and by failing to provide her with a reasonable accommodation for her disability. Defendant was aware that Plaintiff requested a reasonable accommodation prior to her termination.

76. Defendant's conduct was intentional, deliberate, willful and conducted in callous, malicious and reckless disregard of Plaintiff's protected rights.

77. As a direct and proximate result of Defendant's illegal discrimination, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal and equitable remedies available under the NYCHRL, including, but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, and compensatory and punitive damages, in amounts to be determined at trial.

78. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and will continue to suffer severe harm, and is entitled to all legal remedies available under the NYCHRL, including, but not limited to, punitive damages and compensatory damages, in amounts to be determined at trial, as well as interest, costs, and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (FMLA Retaliation)

79. Plaintiff repeats and realleges each and every allegation previously set forth.

80. Defendant is an employer under the FMLA, 29 U.S.C. § 2611(4)(a).

81. Plaintiff qualified for leave pursuant to the FMLA, 29 C.F.R. § 825.102.

82. Plaintiff suffers from a "serious health condition" as defined by the FMLA.

83. Plaintiff needed to take FMLA leave on an intermittent basis in order to treat her serious health condition for which absences she qualified for FMLA leave.

84. Defendants terminated Plaintiff's employment due to her entitlement to protected medical leave under the FMLA.

85. Defendant terminated Plaintiff's employment due to absences which qualified for protection under the FMLA.

86. Defendant's conduct constitutes a violation of the FMLA, 29 U.S.C. § 2601, *et. seq*.

87. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer humiliation, embarrassment, economic loss, and other such damages.

88. Defendant's conduct constitutes actual participation in egregious behavior and/or willful indifference to such egregious conduct by upper-level management that is sufficient to subject Defendant to punitive damages.

89. Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of FMLA.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff demands a trial by jury and judgment against Defendant as follows:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but

not limited to, compensation for her mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D. An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

E. Reinstatement to her position with all benefits and seniority.

F. An award of punitive damages; and

G. An award of costs and disbursements that Plaintiff incurred in this action, as well as Plaintiff's attorneys' fees to the fullest extent permitted by law.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, New York
May 14, 2024

ROBERT WISNIEWSKI P.C.

By: */s/Robert Wisniewski*
Robert Wisniewski
*Attorneys for Plaintiff*
17 State Street, Suite 820
New York, NY 10005
Tel.: (212) 267-2101
Email: rw@rwapc.com